Hearing:                                          Paper No. 16
May 9, 1996                                           RLS/TLW

THIS DISPOSITION IS NOT
CITABLE AS PRECEDENT OF THE TTAB     5/19/98
                U.S. DEPARTMENT OF COMMERCE
                PATENT AND TRADEMARK OFFICE
                     _____

              Trademark Trial and Appeal Board
                     _____

         In re International Flavors & Fragrances Inc.
                     _____

          Serial Nos. 74/532,528, 74/532,529 & 74/591,331
                     _____

Arthur L. Liberman for International Flavors & Fragrances
Inc.

Linda E. Blohm, Trademark Examining Attorney, Law Office 106
(Mary Sparrow, Managing Attorney)
                     _____

Before Simms, Seeherman and Hohein, Administrative Trademark
Judges.

Opinion by Simms, Administrative Trademark Judge:


     International Flavors & Fragrances Inc. (applicant), a

New York corporation, has appealed from the final refusals

in two applications filed by applicant to register the marks

LIVING xxxx FLAVORS and LIVING xxxx FLAVOR for, in each

case, the following goods:

          essential oils for use in the
          manufacture of flavored foodstuffs,
          smoking tobacco compositions, smoking
          tobacco articles, chewing tobacco
          compositions, chewing gums, oral care
          products and beverages, in Class 3; and

> non-synthetic and synthetic flavor
> substances for use in the manufacture of
> flavored foodstuffs, smoking tobacco
> compositions, chewing tobacco
> compositions, smoking tobacco articles,
> chewing gums, oral care products and
> beverages, in Class 30.[1]

Applicant has also appealed from the final refusal to register the mark LIVING xxxx for the following goods:

> non-synthetic and synthetic fragrances
> for use in the manufacture of colognes,
> cosmetics, hair preparations,
> toiletries, detergents, fabric
> softeners, odorants, deodorants,
> bleaches, brighteners and air
> fresheners, in Class 1; and
> essential oils for use in the
> manufacture of colognes, cosmetics,
> toiletries, hair preparations,
> detergents, fabric softeners, odorants,
> deodorants, bleaches, brighteners and
> air fresheners, in Class 3.[2]

In the first application, applicant has indicated that:

> The meaning of "xxxx" is for a specific
> herb, fruit, plant or vegetable as
> exemplified by the attached labels and

---

[1] Applications Serial Nos. 74/532,528 and 74/532,529, both filed June 2, 1994.
[2] Application Serial No. 74/591,331, filed October 27, 1994. All three applications are based upon applicant's use of its marks in commerce. The first two applications recite June 1, 1994 as applicant's dates of first use and first use in commerce and the last application recites November 1, 1989 as such dates. In each application, applicant has claimed ownership of four registrations covering the marks LIVING FRAGRANCE ("FRAGRANCE" disclaimed) for various fragrances and essential oils (Registration No. 1,611,778, issued September 4, 1990, Sections 8 and 15 affidavit filed); LIVING FLOWERS for various fragrances and essential oils (Registration No. 1,613,442, issued September 18, 1990, Sections 8 and 15 filed); LIVING MINT ("MINT" disclaimed) for various flavor substances and essential oils (Registration No. 1,808,736, issued December 7, 1993); and LIVING FRUIT ("FRUIT" disclaimed) for various essential oils and flavor substances (Registration No. 1,813,331, issued December 28, 1993).

> as exemplified as follows: LIVING HERB
> FLAVORS; LIVING FRUIT FLAVORS; LIVING
> MINT FLAVORS; LIVING SPICE FLAVORS;
> LIVING RASPBERRY FLAVORS; LIVING
> NECTARINE FLAVORS; LIVING PINEAPPLE
> FLAVORS; LIVING STRAWBERRY FLAVORS;
> LIVING GREEN PEPPER FLAVORS; LIVING RED
> PEPPER FLAVORS; LIVING CARAWAY FLAVORS.

By subsequent amendments, applicant has disclaimed exclusive rights to the use of the words "FLAVORS" and "FLAVOR" and has asserted that:

> The "xxxx" designations are themselves
> not part of the mark.

Applicant has appealed from the final requirements of the Examining Attorney to submit appropriate specimens showing marks which agree with the various marks shown on the drawing pages of these three applications--that is, to submit specimens showing, for example, the precise mark LIVING xxxx FLAVORS.

Applicant's attorney and the Examining Attorney have submitted briefs and an oral hearing was held.

The issue framed by the briefs submitted in this case is whether applicant has provided acceptable specimens which "match" or support the marks sought to be registered on the drawings. In applicant's brief, applicant has pointed to a number of subissues including whether use of the designation "xxxx" is similar to the use of dashes or underlining used on third-party registrations and applications of record to represent a so-called "phantom element."

It is the Examining Attorney's position that the various marks shown on the drawing pages of the

3

applications, for example, LIVING xxxx FLAVORS, differ from the marks shown on the various specimens, for example, LIVING GREEN BELL PEPPER FLAVORS. Further, the Examining Attorney maintains that applicant cannot amend the marks shown on the drawings to conform to the display of the marks on the specimens because the character of each of the marks on the drawings would then be materially altered. Accordingly, the Examining Attorney made a requirement in each of these cases for applicant to submit substitute specimens evidencing use of the particular marks on the respective drawings:

> By submitting a drawing that includes XXXX and asking the Office to interpret XXXX as the name of any herb, fruit, plant, or vegetable, applicant is attempting to register many different marks in one application, which is not permitted. To allow an element of a drawing of a mark to refer to a large number of different terms is also unacceptable because it results in a mark which will be difficult or impossible for an Examining Attorney to search. In the case at issue, in order to conduct a proper search, the Examining Attorney would be required to know of and to search the name [of] every herb, fruit, plant or vegetable in existence.
>
> Additionally, third parties would not have been given proper notice as to the true content on the proposed mark/marks.

Examining Attorney's appeal brief, 4-5. Further, it is the Examining Attorney's position that the phantom element

4

("xxxx") is considered distinctive and cannot be used to represent other terms.

Applicant, on the other hand, argues that the specimens submitted are sufficient to support the respective applications. Initially, applicant offered to submit amended drawings conforming to the manner in which "phantom elements" are depicted in other applications and registrations allowed by this Office. In this regard, applicant has pointed to at least one registration and two allowed applications (shown below) where underlining or dashes were used to represent various model numbers, geographic areas or years, and where statements accompanied those allowed marks explaining what the underlining and dashes represented. Also, by analogy, applicant has pointed to Trademark Rule 2.51(d) which permits broken lines to be used in drawings to show matter which is not claimed as part of a mark.

The Examining Attorney has attempted to distinguish the applications and registration noted by applicant by arguing that here each of applicant's marks makes "a completely different commercial impression than is made by [the mark on] the drawing page."  Examining Attorney's appeal brief, 6.  It is the Examining Attorney's contention that, in the noted registration and applications, the designations or terms omitted from the marks do not create a separate commercial impression.  Here, the Examining Attorney contends, the commercial impression changes depending upon

6

which herb, fruit, plant or vegetable name is inserted into the mark.

After careful consideration of the arguments, and upon review of relevant authority, it is our opinion that applicant is entitled to the registrations it seeks, but that amendments to each of the drawings must be submitted. We can find no precedent which would prohibit an applicant from attempting to register marks such as applicant is here seeking to register--that is, a mark with a so-called "phantom element" intended to represent a generic or otherwise unprotectable designation. In fact, applicant has made of record examples where the Office has permitted such a practice in the past. Moreover, it seems to us that, contrary to the Examining Attorney's argument, and depending upon the descriptive designations or numbers used in those registered marks, commercial impressions may even vary somewhat in those registered and published marks as well. We see no real distinction between the substitution of a descriptive flavor or fragrance designation such as "STRAWBERRY" or "MINT" and the substitution of various model designations, dates or geographic areas in the noted registration and applications. Finally, with respect to the Examining Attorney's argument concerning the difficulty of searching marks with phantom elements, we observe that while marks must, of course, be considered in their entireties, it is nevertheless the case that where the phantom element is a descriptive or generic term, it is the arbitrary or

suggestive component of an applicant's mark which principally creates or projects the commercial impression made by the mark as a whole. Thus, in this case, it is the search of the arbitrary or suggestive word "LIVING" which is most likely to reveal any potential bars to registration under Section 2(d) of the Act and not the search of some other marks having the phantom element but not the arbitrary or suggestive component. For example, if the mark is "LIVING GREEN BELL PEPPER," searching marks with the word "LIVING" or variations thereof is far more likely to reveal a potential bar to registration than searching marks which share only the words "GREEN BELL PEPPER."

The only question remaining, therefore, is whether we should permit applicant to register the marks in the form it has sought or possibly in some other form previously sanctioned by this Office. As noted, the Examining Attorney has rejected any proposed amendment to substitute alternative matter for the designation "xxxx," arguing that the "xxxx" portion of applicant's asserted mark is distinctive and that an amendment to the drawing would be an impermissible material alteration.

Subsequent to the oral hearing in this case, the Court of Appeals for the Federal Circuit handed down an opinion in In re ECCS, Inc., 94 F.3d 1578, 39 USPQ2d 2001 (1996). Like this case, that case involved a situation where the original application was internally inconsistent as to what the mark was--the specimens displaying one mark and the drawing a

slightly different mark--which inconsistency the applicant sought to correct by way of amendment of the drawing. There, the court permitted an amendment to the drawing to conform to the manner in which the mark was displayed on the specimens, even though the Examining Attorney had argued that to permit such an amendment would be a material alteration of the mark.  Similarly, here we believe that amendments to applicant's drawings to delete the designation "xxxx" and to substitute therefor a different format of the phantom element should be permitted.  Clearly, in light of the marks actually used by applicant, as shown by the specimens, applicant's intent was to show the phantom element on the drawing of each of its marks and not the literal expression "xxxx."

For the sake of consistency, we believe it would be preferable for applicant to obtain registrations where the phantom element is represented by either dashes or solid underlining.  Here, because the number of letters in the word or words to be represented by the phantom element may vary, solid underlining (rather than dashes) should be used in place of the "xxxx."  In this regard, we note that applicant has offered to amend its mark to the manner preferred by this Office.  Accordingly, pending submission of amended drawings in the above-identified applications, and amended statements (to be printed on the registrations) which describe and explain the marks by reflecting the use of the underlining markings (rather than the use of "xxxx"),

the refusals to register are affirmed.  Upon the submission of amended drawings and amended statements, our decision will be set aside and these applications will be forwarded to publication.

Decision: Pending submission of the above-noted amendments and statements, refusal of registration in each case is affirmed.  Applicant is allowed until 30 days from the date of this decision in which to submit the amended drawings and statements.

R. L. Simms

E. J. Seeherman

G. D. Hohein
Administrative Trademark
Judges, Trademark Trial
and Appeal Board